UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| MATTHEW WRIGHT, | ) | C/A: 2:26-cv-3438-BHH-MHC |
| | ) | |
| Plaintiff, | ) | **COMPLAINT** |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| WAL-MART ASSOCIATES, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff, Matthew Wright ("Wright"), through his undersigned counsel, complaining of the acts of Defendant Wal-Mart Associates, Inc. ("Wal-Mart"), alleges as follows:

## NATURE OF CLAIM

1. This action is brought for racial discrimination in employment under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and under 42 U.S.C. § 1981 ("Section 1981"). Wright seeks back pay, front pay, compensatory damages, punitive damages, prejudgment interest, attorney's fees and costs, and other relief arising out of the termination of his employment on February 20, 2025.

## PARTIES, JURISDICTION, AND VENUE

2. Wright realleges each and every allegation contained in Paragraph 1 as if repeated here verbatim.

3. Wright is a citizen and resident of Berkley County, State of South Carolina.

4. Wal-Mart is a foreign limited partnership maintaining offices and agents and otherwise doing business in the State of South Carolina, including the operation of the Wal-Mart Supercenter located at 3000 Proprietors Place, Mount Pleasant, South Carolina. Wal-Mart's registered agent for service of process is CT Corporation System, 2 Office Park Court, Suite 103,

Complaint

Columbia, South Carolina 29223.

5. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Wright's claims arising under Title VII and Section 1981.

6. Wright timely filed a Charge of Discrimination against Wal-Mart with the Equal Employment Opportunity Commission ("EEOC") and has exhausted his administrative remedies prior to the filing of this action. The EEOC issued Wright his Notice of Right to Sue on May 20, 2026

7. Venue in this District and in this Division is appropriate pursuant to 28 U.S.C. §§ 1391(b)(2) and 1391(c), as a substantial part of the events giving rise to the claims occurred in this Division, and Wal-Mart has extensive and deliberate contacts in this Division.

8. Based upon the above, jurisdiction and venue are proper in this Court and Division.

### FACTS

9. Wright realleges each and every allegation contained in the above paragraphs as if repeated here verbatim.

10. Wright is a white male.

11. Wal-Mart operates a Wal-Mart Supercenter located at 3000 Proprietors Place, Mount Pleasant, South Carolina ("Wal-Mart Supercenter").

12. Wright came to the Wal-Mart Supercenter as its Store Manager on October 19, 2019, bringing with him 25 years of retail experience from working at Home Depot and Lowe's Home Improvement.

13. During his four years as Store Manager, his performance was always rated as a solid performer, and the store was highly profitable and operated very efficiently.

14. On February 20, 2025, Wright's employment was suddenly terminated by Market

Complaint

Director Natoya Champion ("Champion") and Asset Protection Market Manager Matthew Altom ("Altom") for allegedly violating AP-09 (Customer Theft Policy) and AP-24 (Trespassing Individuals' Policy).

15.    Wal-Mart made the decision to terminate Wright's employment before it ever questioned Wright or asked him to explain, in his own words, what had happened.

26.    The customer interaction that Wal-Mart relied upon to terminate Wright actually occurred as outlined in Paragraphs 17 – 22 below.

17.    Wright, needing to use the restroom, entered the Men's restroom in the back of the store by the electronics department. Upon entering, a male customer ("Customer") was standing outside of the stalls with his back to the entrance of the bathroom.

18.    As Wright was using the urinal, he noticed Customer standing near one of the stalls, close to one of the sinks. Wright heard a noise that sounded like packaging being torn off. As Wright turned around to wash his hands, Customer appeared to notice Wright's Wal-Mart name badge and immediately said, "I am going to pay for these." Wright said, "No problem, we can go up front so you can pay for them."

19.    Wright exited the bathroom and waited for Customer to come out. Once Customer came out, they started walking up towards the front office, with Wright walking in front of Customer and Customer following him.

20.    As Wright and Customer were walking towards the front, Wright glanced back and saw Customer trying to stuff merchandise packaging into an Action Ally Feature, but some of the packaging fell to the floor.

21.    The Auto Care Manager, Virgie Cannon ("Cannon"), appeared. Wright told Cannon that Customer wanted to go up front to pay for the merchandise, and Cannon also went up

Complaint

to the front office with Customer and Wright.

22.    Wright called Patrick Ridenhour, Asset Protection, on the radio and relayed information about Customer. Ridenhour instructed Wright to bring Customer to Room 100.  After walking Customer to Room 100, Ridenhour and Cannon handled the situation from that point.

23.    Following his termination, Wright first followed the Wal-Mart Open Door Policy by appealing his termination to Region 4, but his termination was upheld.

24.    Wright continued the Open Door process by going to the East Business Unit. Ivy Barney, the Division President, stated that the interaction with the Customer should be reviewed more from an "operators" perspective than from an "AP" or Asset Protection perspective. Wal-Mart referred the decision to Heather Johnson ("Johnson").

25.    Wright spoke with Johnson and provided her with the same information, along with his concerns about how the investigation was conducted, how he was terminated, and how the Open Door was handled by the Region 4 team.

26.    Wright informed Johnson that he had been told Cannon had provided a written statement about her involvement in the interaction with Customer. Cannon, however, had told Wright that she had not spoken to anyone or written any statement about Customer.

27.    Wright provided Johnson with the details of another salaried manager, John Cofield ("Cofield"), a black male, at a neighborhood market store, whom Wal-Mart had found had violated the AP-09 policy.

28.    Cofield was not an authorized Asset Protection associate and did not have any of the elements needed to make a stop of a customer.

29.    Cofield had chased a customer into the parking lot, yet he was given a red-level coaching rather than termination.

Complaint

30.     Wright and Cofield were both employed by Wal-Mart in salaried management positions and were similarly situated.

31.     Johnson called Wright on April 3, 2025, to advise that the termination was going to be upheld. Johnson stated that her notes would be updated to indicate that Wright did not violate the AP-24 Policy, leaving the alleged violation of AP-09 as the sole reason for his termination.

32.     Wright asked Johnson why he was terminated for the alleged AP-09 violation instead of receiving a yellow, orange, or red level coaching, as Cofield had received. Johnson's response was that Cofield's situation involved different circumstances, and that Cofield is African-American.

33.     AP-09 provides that an associate may not pursue a fleeing customer or direct anyone into the parking lot in pursuit of evidence.

34.     Cofield had chased a customer into the parking lot.

35.     The facts leading to Cofield's violation of AP-09 were more severe than the facts of Wright's alleged violation of AP-09.

36.     Cofield was given a red-level coaching.

37.     Cofield's employment was not terminated.

### FOR A FIRST CAUSE OF ACTION
**(Racial Discrimination in Violation of Title VII)**

38.     Wright realleges each and every allegation contained in the above paragraphs as if repeated here verbatim.

39.     Title VII prohibits an employer from discriminating against any individual with respect to the terms, conditions, or privileges of employment because of that individual's race.

40..     At all times relevant to this Complaint, Wal-Mart was an employer required to abide by Title VII.

Complaint

41.     Wright is a member of a protected class based on his race.

42.     Wright was qualified for his position and performed his job as Store Manager satisfactorily, having been rated as a solid performer throughout his employment.

43.     Wal-Mart terminated Wright's employment on February 20, 2025, purportedly for violating AP-09 (Customer Theft Policy) and AP-24 (Trespassing Individuals' Policy).

44.     After Wright appealed his termination, Wal-Mart, through Heather Johnson, withdrew the alleged AP-24 violation, leaving the alleged AP-09 violation as the sole stated reason for the termination.

45.     Cofield, a black male, was a salaried manager for Wal-Mart.

46.     Cofield was similarly situated to Wright.

47.     Cofield was found to have violated the same AP-09 policy as Wright.

48.     Cofield had chased a customer into the parking lot without being an authorized Asset Protection associate.

49.     Cofield was given a red-level coaching rather than his employment being terminated.

50.     When Wright asked Johnson why he was terminated rather than given a lesser level of coaching, as Cofield had been, Johnson responded that it was different circumstances, and that Cofield is African-American.

51.     Wal-Mart treated Wright less favorably than the similarly-situated Cofield with respect to the discipline imposed for a violation of the same policy.

52.     Wal-Mart's stated reason for terminating Wright is a pretext for unlawful racial discrimination.

53.     Wal-Mart's discriminatory conduct was intentional, willful, and undertaken with

Complaint

malice or reckless indifference to Wright's federally protected rights.

54.     As a direct and proximate result of Wal-Mart's unlawful racial discrimination, Wright has suffered and continues to suffer damages, including lost wages and benefits, lost future earnings, and other damages.

55.     As such, Wright seeks to recover from Wal-Mart the following damages:

  a. back pay and lost benefits;

  b. front pay;

  c. compensatory damages;

  d. punitive damages;

  e. prejudgment interest on back pay;

  f. reasonable attorney's fees and the costs of this action; and

  g. an order requiring Wal-Mart to comply with Title VII.

**FOR A SECOND CAUSE OF ACTION**
**(Racial Discrimination in Violation of 42 U.S.C. § 1981)**

56.     Wright realleges each and every allegation contained in the above paragraphs as if repeated here verbatim.

57.     Section 1981 prohibits intentional racial discrimination in the making, performance, modification, and termination of contracts, including employment contracts, and guarantees all persons the same right to make and enforce contracts regardless of race.

58.     At all times relevant to this Complaint, Wal-Mart was subject to, and covered by, Section 1981.

59.     Wal-Mart's stated reason for terminating Wright is a pretext for intentional racial discrimination in violation of Section 1981.

60.     Wal-Mart's discriminatory conduct was intentional, willful, and undertaken with

Complaint

malice or reckless indifference to Wright's rights under Section 1981.

61.    As a direct and proximate result of Wal-Mart's unlawful racial discrimination, Wright has suffered and continues to suffer damages, including lost wages and benefits, lost future earnings, and other damages.

62.    As such, Wright seeks to recover from Wal-Mart the following damages:

a.    back pay and lost benefits;

b.    front pay;

c.    compensatory damages;

d.    punitive damages;

e.    prejudgment interest on back pay;

f.    reasonable attorney's fees and the costs of this action; and

g.    an order requiring Wal-Mart to comply with Section 1981.

WHEREFORE, having fully set forth his allegations against Wal-Mart, Wright respectfully requests that the Court enter judgment for the following relief:

a.    For back pay and lost benefits in an amount to be determined;

b.    For front pay in an amount to be determined;

c.    For compensatory damages;

d.    For punitive damages;

e.    For prejudgment interest on back pay;

f.    For reasonable attorney's fees and the costs of this action;

g.    For injunctive relief ordering Wal-Mart to amend its policies and practices to comply with applicable law; and

h.    For such further relief as the Court deems just and proper.

Complaint

**Wright requests a trial by jury.**

s/Bruce E. Miller
Bruce E. Miller (Fed ID 3393)
BRUCE E. MILLER, P.A.
1459 Stuart Engals Blvd., Suite 202
Mount Pleasant, SC 29464
T: 843.579.7373
F: 843.614.6417
bmiller@brucemillerlaw.com

**ATTORNEY FOR**
**MATTHEW WRIGHT**

MOUNT PLEASANT, SC
August 13, 2026